**William M. BELITSKUS, Anne Goeke, Thomas Alan Linzey, Barbara Knox, John Stith, Eric Prindle, Jennaro Pullano, Ralph Nader, Nader 2000 Primary Committee, Pennsylvania Green Party, and Will Donovan III, Plaintiffs,**

v.

**Kim PIZZINGRILLI, in her official capacity as Secretary of State of Pennsylvania, and Richard Filling, in his official capacity as the Commissioner overseeing Pennsylvania's Bureau of Commissions, Elections and Legislation, Defendants.**

No. 3:CV–00–1300.

United States District Court, M.D. Pennsylvania.

Aug. 20, 2001.

John C. Bonifaz, David Kairys, Gregory G. Luke, Bonita P. Tenneriello, Brenda Wright, Nat. Voting Rights Institute, Boston, MA, Jordan B. Yeager, Boockvar & Yeager, Bethlehem, PA, for plaintiffs.

Gregory R. Neuhauser, Office of Atty. Gen., Harrisburg, PA, for defendant.

## *MEMORANDUM*

CAPUTO, District Judge.

This case requires the court to determine whether a provision of the Pennsylvania Election Code providing for a mandatory filing fee is constitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The court holds that, as applied to candidates such as Plaintiff John Stith who are unable to pay the filing fee, the Pennsylvania law violates the Equal Protection Clause.

## BACKGROUND

This matter began with an application by individual members of the Green Party for a preliminary injunction requiring the Commonwealth of Pennsylvania to allow them to appear on the ballot without paying the mandatory filing fee. Most of the plaintiffs in the case moved for their voluntary dismissal, leaving only the Pennsylvania Green Party and individual plaintiffs Stith, Linzey, and Donovan. (Doc. 19.) Hearings were held on July 27, 2000, and on the basis that Stith established his inability to pay the required filing fee, the Court entered an order requiring the Commonwealth to provide him an alternate means of ballot access. (Doc. 11.)

Thereafter, both parties filed motions for summary judgment, the Commonwealth seeking to validate the constitutionality of the Pennsylvania Election Code and Plaintiffs seeking to have the Code declared violative of the United States Constitution. (Docs. 36, 39.) Briefs were filed and oral argument was made, and the motions are now ripe for decision.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that the moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is material if proof of its existence or non-existence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986). Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. On the other hand, where there is a disputed issue of material fact, summary judgment will lie only if the factual dispute is not a genuine one, that is, if the evidence adduced by the parties is such that no reasonable jury could return a verdict for the nonmoving party under the governing evidentiary standard. *Id.*, 477 U.S. at 248–53, 106 S.Ct. at 2510–12.

Though a court considering a summary judgment motion need not accept conclusory allegations or denials taken from the pleadings, *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990), the court must credit the evidence of the non-movant and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511.

## DISCUSSION

There is no dispute as to the facts. Stith sought access to the ballot as a candidate for Pennsylvania State Representative for the 77th District. He met all of the requirements of the Pennsylvania Election Code with the exception of the payment of the mandatory filing fee of $100.00, which he said he could not afford. The evidence shows that Stith's living expenses, i.e. what he was required to pay for necessities, exceeded his income in

1. The deadline for ballot placement was August 1, 2000.

2. Plaintiffs Linzey and Donovan did not present evidence establishing that they could not

July, 2000.[1] These expenses did not include medical insurance.[2]

Pennsylvania law requires the payment of a filing fee in order for a candidate to be placed on the ballot. There are no exceptions. The law provides, in pertinent part, that

Each person filing any nomination petition shall pay … a filing fee … and no nomination petition shall be accepted or filed, unless and until such filing fee is paid by certified check or money order.

25 P.S. § 2873. Because this provision contains no exception to the filing fee requirement for indigent candidates, a candidate who does not pay the fee does not appear on the ballot.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The United States Supreme Court has decided two cases which deal with the constitutionality of candidate filing fees: *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) and *Lubin v. Panish*, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974).

In *Bullock*, the Court considered a Texas law which provided for filing fees as a condition of attaining access to the ballot. The filing fees in question ranged from $1,000 to $6,300. The would-be candidates failed to pay the fee and consequently were denied access to the ballot. The court determined that the Texas law violated the equal protection clause because it provided no alternative means of securing ballot access. In reaching its conclusion, the Court noted that in the case of the

afford to pay the filing fee. Accordingly, the Commonwealth's motion for summary judgment will be granted as to them.

Texas law, there was no alternative to paying the filing fee such as a provision allowing write-in voting. The Court also suggested that "this would be a different case if the fees approximated the cost of processing a candidate's application for a place on the ballot." *Bullock*, 405 U.S. at 148 n. 29, 92 S.Ct. at 858 n. 29.

The Court's decision in *Lubin* put to rest the notions, raised by the above *dicta* in *Bullock*, that the fee in *Bullock* was unconstitutional simply because it was too large or that a write-in provision would constitute a reasonable alternative to appearing on the ballot.[3] With regard to former issue, the Court said:

> Selection of candidates solely on the basis of ability to pay a fixed fee without providing any alternative means is not reasonably necessary to the accomplishment of the State's legitimate election interests. Accordingly, we hold that in the absence of reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay.

*Lubin*, 94 S.Ct. at 1321. The Court determined that, while the state had legitimate interests in keeping frivolous candidates off the ballot and avoiding laundry list ballots, a completely mandatory fixed fee is not an acceptable way to address these interests. Critically, the Court's analysis did not turn on the size of the particular filing fee before it. Rather, the Court held without qualification that the state could not "require from an indigent candidate filing fees he cannot pay." *Id.*

The *Lubin* court likewise dispelled the notion that a write-in provision provides a reasonable alternative to a mandatory filing fee for those who cannot afford the fee, stating that "[t]he realities of the electoral process ... strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot." *Lubin*, 415 U.S. at 719 n. 5, 94 S.Ct. at 1321 n. 5. Following the reasoning of this footnote, this court also concludes that requiring an indigent candidate to rely on the voters' ability to remember his or her name, a strategy the *Lubin* court deemed "dubious at best," is not an "acceptable alternative" to appearing on the ballot. *Id.*

■ *Bullock* and *Lubin* are rooted in each adult citizen's right to have an equal opportunity to vote the candidate of his or her choice. Mandatory filing fees, which preclude some candidates from appearing on the ballot, deprive certain portions of the electorate of the right to vote for their preferred candidate and thus violate the Equal Protection Clause. "The effect of this exclusionary mechanism on voters is neither incidental nor remote, not only are voters substantially limited in their choice of candidates, but also there is the obvious likelihood that this limitation would fall more heavily on the less affluent segment of the community." *Bullock*, 405 U.S. 134, 143–144, 92 S.Ct. 849, 856. Nor is this exclusionary effect sufficiently mitigated by the fact that other persons can contribute the candidate's filing fee, since such a system would tend to "deny some voters the opportunity to vote for a candidate of their choosing; [while] at the same time ... giv[ing] the affluent the power to place on the ballot names of persons they favor." *Id.*

---

3. The Pennsylvania law provides for write-ins: A voter may, at any primary or election, vote for any person for any office, for which office his name does not appear upon the voting machine as a candidate, by an irregular ballot containing the name of such person deposited, written or affixed in or upon the appropriate receptacle or device provided in or on the machine for that purpose, and in no other manner.

25  P.S. § 3056(e).

Likewise, a system which proffers the ability to write in a candidate as an alternative to mandatory filing fees falls short of the mark. Even without considering the fact that some voters who possess the ability to recognize a printed name may lack the ability to write one in, it is enough to say that requiring an indigent candidate to depend on the voter's ability to remember his or her name is not an acceptable alternative to the filing fee. Nor is it reasonable to require some voters, but not others, not only to remember the name of their candidate but also to follow special instructions in order to exercise the write-in alternative. I therefore conclude that the write-in provision of the Pennsylvania Election Code cannot be considered a reasonable or acceptable alternative to placing the indigent candidate's name on the ballot.

In addition to suggesting that the write-in provision of the Pennsylvania Election Code provides a reasonable alternative to appearing on the ballot,[4] the Commonwealth relies on *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992), and contends that when considering a restriction on the voting rights of the electorate, a court must balance the "character and magnitude" of the asserted injury with the precise interest which the state is seeking to vindicate. In particular, the Commonwealth argues that the state's interest in regulating the ballot process outweighs the harm to voter's rights occasioned by the fee require-

ment. At oral argument, however, the Commonwealth could neither point to specific state interests relating to the balloting process that were not considered in *Bullock* and *Lubin,* nor produce any evidence which tied the amount of the filing fee to the regulation of the balloting process. *See Bullock,* 405 U.S. at 148 n. 29, 92 S.Ct. at 858 n. 29. ("[t]his would be a different case if the fees approximated the cost of producing a candidate's application for a place on the ballot").[5]

Even assuming *arguendo* that the Commonwealth had identified state interests not considered in *Bullock* and *Lubin,* it is quite clear that the balancing test discussed in *Burdick* has already been applied by the Supreme Court in *Bullock* and *Lubin* and has yielded the conclusion that a mandatory filing fee which contains no reasonable alternative for indigent candidates violates the Equal Protection Clause of the Fourteenth Amendment.[6] This court is not free to revisit the balancing previously performed by the Supreme Court.

■ Therefore, given *Lubin's* clear holding that absent a reasonable alternative, a filing fee which an indigent candidate cannot afford violates the Fourteenth Amendment, and given *Lubin's* clear instruction that a write-in option is not an acceptable alternative to appearing on the ballot, I conclude that the provision of the Pennsylvania Election Code mandating the payment of a filing fee, 25 P.S. § 2873, is

4. As noted above, this argument is effectively rejected by *Lubin.*

5. In addition, it is significant to note that *Burdick* did not involve a challenge to a filing fee, but rather a prohibition on write-in voting.

6. This is analogous to the development of the stop, look and listen rule in tort law. That rule began with the general rule of negligence law that every person must exercise due care.

But as that standard was repeatedly applied to persons crossing railway lines, it was ultimately refined to the rule that such persons were negligent if they failed to stop, look and listen. *Bullock* and *Lubin* have determined, after balancing the state's interests against those of the electorate, that the state's interest cannot outweigh the harm imposed by a provision for a mandatory filing fee which contains no reasonable alternative for those who cannot afford it.

unconstitutional as applied to indigent candidates such as Stith. Consequently, the permanent injunction will be granted.[7]

An appropriate order will follow.

### ORDER

**NOW,** this 20th day of August, 2001, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for summary judgment (Doc. 39) is **GRANTED** as to Plaintiff Stith and **DENIED** as to Plaintiffs Linzey and Donovan;

2. Defendants' motion for summary judgment (Doc. 36) is **GRANTED** as to Plaintiffs Linzey and Donovan, and **DENIED** as to Plaintiff Stith;

3. Defendants are permanently **ENJOINED** from:

   a) applying 25 P.S. § 2873 to Plaintiff Stith or other candidates who cannot afford to pay the filing fee; or

   b) otherwise requiring candidates to pay a filing fee they cannot afford in order to appear on the ballot;

4. The Clerk of Court is directed to close this case.

---

**7.** Though the election has already occurred, Stith's case is not moot because it falls within the "capable of repetition yet evading review" exception to the mootness doctrine. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973).